**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robert Bass,<br><br>      Plaintiff,<br><br>vs.<br><br>Commissioner of Social Security Administration,<br><br>      Defendant. | No. CV 16-782-TUC-LAB<br><br>**ORDER** |

The plaintiff filed this action for review of the final decision of the Commissioner for Social Security pursuant to 42 U.S.C. § 405(g). (Doc. 1, p. 1)

The Magistrate Judge presides over this case pursuant to 28 U.S.C. § 636(c) having received the written consent of both parties. *See* FED.R.CIV.P. 73; (Doc. 15)

The court finds that the final decision of the Commissioner is supported by substantial evidence and free from legal error.

Bass's condition does not meet or equal Listing 5.06. *See* 20 C.F.R. Part 404, Subpt P, App. 1 § 5.06. The ALJ properly discounted Bass's credibility. The ALJ properly identified and resolved the conflict between the Dictionary of Occupational Titles (DOT) and the testimony from the vocational expert.

PROCEDURAL HISTORY

On September 17, 2014, Bass filed for disability insurance benefits pursuant to Title II of the Social Security Act and supplemental security income pursuant to Title XVI. (Tr. 19),

(Tr. 251), (Tr. 279-287) He alleged disability beginning on May 30, 2014, due to scoliosis, degenerative disc disease with radiculopathy, headaches, gastric complications of hernia repair, left knee DJD (degenerative joint disease), depression, anxiety, and gastroparesis (stomach partial paralysis). (Tr. 313)

His claims were denied initially (Tr. 154-157, 251) and upon reconsideration (Tr. 159-162, 251). Bass requested review and appeared with counsel at a hearing before Administrative Law Judge (ALJ) Laura Havens on February 11, 2016 and again on June 22, 2016. (Tr. 39, 60) In her decision, dated July 14, 2016, the ALJ found Bass was not disabled. (Tr. 19-29) Bass appealed, and on September 23, 2016, the Appeals Council accepted review. (Tr. 4)

In a decision dated October 25, 2016, the Appeals Council found that Bass is not disabled. (Tr. 4-6) The Appeals Council adopted most of the ALJ's decision but made some significant amendments. *Id*. Bass's filing date was changed to June 16, 2014, his last insured date was changed to December 31, 2018, and his Residual Functional Capacity was changed to "a reduced range of *light* exertional work." (Tr. 4-5) (emphasis added) The Appeals Council concluded that Bass was able to "perform past relevant work as a pharmacy clerk/customer service clerk as it was actually performed by him and generally performed in the national economy." (Tr. 5) In the alternative, Bass could work as a counter clerk or a cashier. (Tr. 6) Accordingly, the Appeals Council found that Bass was not disabled through the date of the hearing decision. (Tr. 6) Bass subsequently filed this action appealing the Commissioner's final decision. (Doc. 1)

Claimant's Work History and Medical History

Bass worked as an emergency medical technician between March of 1993 and September of 2008. (Tr. 315) He worked as a driver between July of 2010 and June of 2011. (Tr. 315) He worked in a mail order pharmacy between September 2011 and March of 2013. (Tr. 315, 66)

Bass alleged disability beginning on May 30, 2014, due to scoliosis, degenerative disc disease with radiculopathy, headaches, gastric complications of hernia repair, left knee DJD

(degenerative joint disease), depression, anxiety, and gastroparesis (a disorder that slows or stops the movement of food from the stomach to the small intestine). (Tr. 313)

In January of 2015, John Fahlberg, M.D., reviewed the medical record for the disability determination service and offered an opinion of Bass's physical limitations. (Tr. 99) Fahlberg opined that Bass could lift 20 pounds occasionally and 10 pounds frequently. (Tr. 99) He could sit, stand, and/or walk for 6 hours in an 8-hour day. (Tr. 99) He should only occasionally climb ladders, rope, or scaffolds. (Tr. 99) Falhberg opined that Bass "is on [a] vigorous campaign for disability due to homelessness and unemployment." (Tr. 99) "He does have some mild to mod[erate] [diagnoses] that are supported but [it] appears his seeking of med[ical] attention for rather minor illnesses is exaggerated and [is] leading to excessive weakly supported [diagnoses]." (Tr. 99) Falhberg's opinion suggests that Bass can perform light work with some exceptions. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b).

In February of 2015, Stephen Bailey, Ed.D., reviewed the medical record for the disability determination service and offered an opinion of Bass's mental limitations. (Tr. 97) He diagnosed affective disorder and anxiety-related disorder. (Tr. 97) He evaluated Bass's "B" listing criteria, which gauge the severity of his mental impairment. *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). He found Bass has no restrictions of his daily activities; "mild" difficulties in maintaining social functioning; "mild" difficulties in maintaining concentration, persistence or pace; and no evidence of decompensation. (Tr. 97) Bailey further opined that the medical evidence did not establish the presence of the "C" criteria, which are an alternative gauge of the extent of his mental impairment. (Tr. 97) According to Bailey, Bass has been treated for depression and anxiety, but he reports "no psychological symptoms that would limit him in a work setting." (Tr. 97) Bailey concluded that Bass's mental impairment was non-severe. (Tr. 97)

In April of 2015, Eric Penner, Ph.D., reevaluated Bass's medical record and affirmed Bailey's opinion. (Tr. 118) According to Penner, "[the] evidence . . . indicates no significant changes in his mental status." (Tr. 117)

In April of 2015, J. Wright, M.D., reevaluated Bass's medical record and agreed with Falhberg that Bass could perform light work with some exceptions. (Tr. 120-121)

In February of 2016, Jerome C. Rothbaum, M.D., examined Bass for the disability determination services. (Doc. 1069) He diagnosed scoliosis, bilateral knee pain, myofascial low back pain, headache, history of gastroparesis (stomach partial paralysis), hiatal hernia, history of diverticulosis (a colon abnormality), status post cholecystectomy (gallbladder removal), history of pulmonary hypertension, history of fibromyalgia (not substantiated), history of malabsorption, and B-12 and ferrous sulfate injections. (Tr. 1079) He opined that Bass could occasionally lift and carry up to 20 lbs. (Tr. 1073) He could sit for 6 hours, stand for 3 hours and walk for 2 hours in an 8-hour day. (Tr. 1074) He could occasionally reach, handle, finger, feel, push, and pull. (Tr. 1075) He could occasionally climb stairs and ramps, balance, stoop, kneel, crouch, or crawl. (Tr. 1067) He should never work at unprotected heights; with moving mechanical parts; or with dust, odors, fumes, or other pulmonary irritants. (Tr. 1077) He could occasionally operate a motor vehicle; work around humidity and wetness; or be exposed to extreme cold, extreme heat, or vibrations. (Tr.1077)

On February 11, 2016, Bass appeared with counsel at a hearing before the ALJ. (Tr. 60) Bass explained that his disabling impairments are "physical only." (Tr. 68-60) His depression and anxiety are "maybe just situational." (Tr. 60) He currently takes "19 or 20 medications." (Tr. 60) He has pain over his entire body. (Tr. 70) Sometimes it is "dull and achy, sometimes it's sharp." (Tr. 70) He has stomach problems that result in constipation, diarrhea, and vomiting. (Tr. 71) He goes to the bathroom six to ten times an hour. (Tr. 71) Bass testified that he can sit, walk, or stand for only 10 to 15 minutes at a time. (Tr. 70)

The ALJ took testimony from Lawrence Haney, a vocational expert. (Tr. 76) Haney opined that a person of the claimant's age, education, and past relevant work, who could sit, stand, or walk 6 hours out of an 8-hour day, who could occasionally lift and carry 20 pound and frequently lift and carry 10 pounds, could frequently climb stairs and occasionally climb ladders, and could frequently balance, stoop, kneel, crouch and crawl, could work as a

1 pharmacy clerk. (Tr. 76-77) The ALJ decided at the end of the hearing to obtain another
2 evaluation of Bass's medical condition. (Tr. 79)

3 On June 22, 2016, Bass appeared with counsel at a second hearing before the ALJ. (Tr.
4 39) On the advice of counsel, Bass amended his disability onset date to April 2, 2015. (Tr. 41)
5 The ALJ took testimony from a medical expert, Alexander B. White, M.D. (Tr. 42) White
6 opined, based on the medical record, that Bass suffers from fibromyalgia syndrome. (Tr. 42)
7 His worst symptom is gastroparesis, partial paralysis of the stomach, which is caused by all the
8 medications he is taking. (Tr. 43) White opined that Bass could perform light work now and,
9 with continued activity, could return to normal functioning. (Tr. 45); *see* 20 C.F.R. §§
10 404.1567(b), 416.967(b). He noted that Bass has lost weight recently but he still has a BMI
11 (body mass index) of 26 to 27 (Tr. 46) White opined that Bass's recent loss of 65 pounds was
12 not indicative of a disability. (Tr. 47-48) Assuming the loss was due to nausea and vomiting,
13 White opined that Bass's symptoms were caused by the excessive medication that he had been
14 prescribed. (Tr. 50)

15 The ALJ took testimony from Robert Bradley Cottle, a vocational expert. (Tr. 53) The
16 ALJ asked Cottle a hypothetical assuming Bass had the RFC given by Rothbaum but without
17 his manipulative restrictions. (Tr. 1073-1077) Cottle opined that a person of the claimant's age,
18 education, and past relevant work, who could sit 6 hours out of an 8-hour day, stand for 3 hours,
19 walk for 2 hours, who requires a sit/stand option every hour, who could occasionally lift and
20 carry 20 pounds, who could never climb ladders, who could occasionally climb stairs, balance,
21 stoop, kneel, crouch and crawl, who is precluded from working jobs involving heights, moving
22 mechanical parts, and dust, fumes, or odors, and who can only occasionally be exposed to
23 temperature extremes and vibrations, could work as a pharmacy clerk, Bass's past relevant
24 work. (Tr. 54-55) In the alternative, such a person could work as a counter clerk or cashier.
25 (Tr. 56)

27 CLAIM EVALUATION

Social Security Administration (SSA) regulations require that disability claims be evaluated pursuant to a five-step sequential process. 20 C.F.R. §§ 404.1520, 416.920. The first step requires a determination of whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If so, then the claimant is not disabled, and benefits are denied. *Id.*

If the claimant is not engaged in substantial gainful activity, the ALJ proceeds to step two, which requires a determination of whether the claimant has a severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). In making a determination at step two, the ALJ uses medical evidence to consider whether the claimant's impairment significantly limits or restricts his or her physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). *Id.* If the ALJ concludes the impairment is not severe, the claim is denied. *Id.*

Upon a finding of severity, the ALJ proceeds to step three, which requires a determination of whether the impairment meets or equals one of several listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); 20 C.F.R. Pt. 404, Subpt. P, App.1. If the claimant's impairment meets or equals one of the listed impairments, then the claimant is presumed to be disabled, and no further inquiry is necessary. *Ramirez v Shalala,* 8 F.3d 1449, 1452 (9th Cir. 1993). If the claimant's impairment does not meet or equal a listed impairment, evaluation proceeds to the next step.

The fourth step requires the ALJ to consider whether the claimant has sufficient residual functional capacity (RFC)[1] to perform past work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If yes, then the claim is denied. *Id.* If the claimant cannot perform any past work, then the ALJ must move to the fifth step, which requires consideration of the claimant's RFC to perform

---

[1] Residual functional capacity is defined as that which an individual can still do despite his or her limitations. 20 C.F.R. §§ 404.1545, 416.945.

other substantial gainful work in the national economy in view of claimant's age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4).

The ALJ's Findings

At step one of the disability analysis, the ALJ found Bass "has not engaged in substantial gainful activity since April 2, 2015, the alleged onset date. . . ." (Tr. 21) At step two, he found Bass "has the following severe impairments: chronic pain syndrome, fibromyalgia, gastroparesis, degenerative joint disease, [and scoliosis]. . . ." (Tr. 21)

At step three, the ALJ found Bass's impairments did not meet or equal the criteria for any impairment found in the Listing of Impairments, Appendix 1, Subpart P, of 20 C.F.R., Part 404. (Tr. 23) The ALJ's findings at steps one, two, and three were later adopted by the Appeals Council. (Tr. 5)

The ALJ then analyzed Bass's residual functional capacity (RFC). She found "the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR §§ 404.1567(a) and 416.967(a) except that the claimant is able to sit for six hours out of an eight-hour day. The claimant can stand for three hours out of an eight-hour day. The claimant can walk for two hours out of an eight-hour day. The claimant requires a sit/stand option every 1 hour. The claimant can occasionally lift and carry twenty pounds. The claimant can never climb ladders. The claimant can occasionally climb stairs, or balance, stoop, kneel, crouch or crawl. The claimant is precluded from working at jobs with heights and moving mechanical parts, or around dust, fumes or odors. The claimant can only occasionally be exposed to temperature extremes or vibrations." (Tr. 23-24) It appears that this is the RFC given by Rothbaum without his manipulative restrictions. (Tr. 1073-1077) The Appeals Council adopted this finding except that it concluded Bass can perform a reduced range of *light* exertional work. (Tr. 5); *see* 20 CFR §§ 404.1567(b) and 416.967(b).

At step four, the Appeals Council found Bass was able to perform his "past relevant work as a pharmacy clerk/customer service clerk as it was actually performed by him and generally performed in the national economy." (Tr. 5) In the alternative, Bass could work as a counter

- 7 -

clerk and a cashier. (Tr. 6) These findings are apparently based on the testimony given by the vocational expert, Robert Bradley Cottle. (Tr. 27, 53) Consequently, the Appeals Council found Bass was not disabled.

STANDARD OF REVIEW

An individual is entitled to disability benefits if he or she demonstrates, through medically acceptable clinical or laboratory standards, an inability to engage in substantial gainful activity due to a physical or mental impairment that can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). "[A] claimant will be found disabled only if the impairment is so severe that, considering age, education, and work experience, that person cannot engage in any other kind of substantial gainful work which exists in the national economy." *Penny v. Sullivan,* 2 F.3d 953, 956 (9th Cir. 1993).

The findings of the Commissioner are meant to be conclusive. 42 U.S.C. §§ 405(g), 1383(c)(3). The decision to deny benefits "should be upheld unless it contains legal error or is not supported by substantial evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* It is "more than a mere scintilla but less than a preponderance." *Id.*

"Where evidence is susceptible to more than one rational interpretation, the [Commissioner's] decision should be upheld." *Orn*, 495 F.3d at 630. "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.*

The Commissioner need not accept the claimant's subjective testimony of disability, but if she decides to reject it, "she must provide specific, cogent reasons for the disbelief." *Lester,* 81 F.3d 821, 834 (9th Cir. 1995). "Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." *Id.* "General findings are insufficient; rather, the [Commissioner]

- 8 -

1 must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.*

### Discussion: Listing 5.06

Bass argues first that the ALJ erred at step three of the disability analysis by failing to find that his condition meets Listing 5.06, which describes when inflammatory bowel disease is so serious that it is *per se* disabling. (Doc. 16, p. 12); see 20 C.F.R. Part 404, Subpt P, App. 1 § 5.06.

As a preliminary matter, Bass argues that the ALJ erred as a matter of law by relying on the medical expert's testimony because it was too equivocal. Bass notes that in *Tonapetyan*, a medical expert testified that he found "the lack of treatment notes from the plaintiff's treating psychiatrist 'confusing' and that it was 'difficult to say' whether the record was complete enough to render an opinion." (Tr. 16, p. 13) (*citing Tonapetya v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001)). The Ninth Circuit found the ALJ erred in relying on that expert's equivocal testimony. *Id.* Similarly, in *Padilla*, where "a medical expert testified both that the plaintiff had no severe impairments and that the expert would agree with another doctor's opinion that the plaintiff would be limited," "the ALJ's reliance on this contradictory testimony was found to be reversible error." (Tr. 16, p. 13) (*citing Padilla v. Astrue*, 541 F. Supp 2d 1102, 1107-08). Bass argues that the medical expert in this case gave a similarly equivocal statement concerning Bass's qualification for Listing 5.06 and that the ALJ should not have relied upon it. The court does not agree with Bass's characterization of the medical expert's testimony.

The medical expert here, Alexander B. White, M.D., testified that Bass did not meet listing 5.06. (Tr. 44) He was not equivocal. He testified that Bass does not have inflammatory bowel disease, he has irritable bowel syndrome. (Tr. 44) White noted that Bass recently lost weight, but be believed this weight loss would not be disabling because Bass was overweight to begin with and "he needed to lose weight." (Tr. 45) He noted that Bass was taking Ensure supplemental nutrition to minimize his stomach discomfort, but be believed it was "no

significant problem." (Tr. 49) White's testimony was not equivocal. The ALJ's reliance on his testimony was not error.

Bass further argues that his condition *is* equivalent to Listing 5.06. 20 C.F.R. Part 404, Subpt P, App. 1 § 5.06. Listing 5.06 explains when a claimant with inflammatory bowel disease has a condition so serious that it is *per se* disabling. The listing sets forth a number of specific factors, two of which must be present to qualify for a *per se* disability finding. Among the listed factors are (1) an "[i]nvoluntary weight loss of at least 10 percent" over six months and (2) a "[n]eed for supplemental daily enteral nutrition via a gastrostomy or daily parenteral nutrition via a central venous catheter." 20 C.F.R. Part 404, Subpt P, App. 1 § 5.06.

Bass argues that he experienced an involuntary weight loss of at least 10 percent and that his doctors "directed him to consume nutritional supplements for persistent gastroparesis symptoms." (Doc. 16) He argues these two factors medically equal the two factors set forth by Listing 5.06 and he is *per se* disabled. The court does not agree.

First, as the medical expert White testified, Bass does not have a diagnosis for inflammatory bowel disease. Second, his condition does not medically equal the two stated factors.

Assuming that Bass did have a 10 percent weight loss, the court finds that his doctor's prescription for the nutritional supplement Ensure does not medically equal the requirement of a "need for supplemental daily enteral nutrition via a gastrostomy [an opening to the stomach through the abdominal wall] or daily parenteral nutrition via a central venous catheter." Listing 5.06. This later factor is important, not simply because the patient needs supplemental nutrition, but because the patient's need for nutrition is so severe and difficult to remedy that nutrition must be introduced through a surgically created abdominal opening or through a central venous catheter. Bass's need for supplemental nutrition is not so dire. Bass has been prescribed the nutritional supplement Ensure, but he takes it the usual way, by drinking it. Bass's prescription for Ensure does not medically equal the supplemental nutrition factor in Listing 5.06.

Bass further argues that White improperly discounted his nausea, vomiting, and weight loss because he found they are merely side effects of his prescribed medications. Bass argues

to the contrary that medical side effects must be considered when evaluating a claimant's ability to work and should not be ignored. (Doc. 16, p. 15) This court agrees that a medication's side effects ordinarily should be considered in the disability analysis. *See* 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv). The court does not agree, however, with Bass's characterization of White's testimony.

White found that Bass's nausea, vomiting, and weight loss are side effects of his prescribed medications, and he found that they do not constitute a disabling condition. (Tr. 50) But he did not reach this conclusion because they are side effects of his medication and therefore unimportant. (Tr. 50) He reached this conclusion because these side effects are the result of over-medication. (Tr. 50-51) White concluded that Bass is taking too much medication. (Tr. 50-51) ("He was eating medicines instead of food."). If he were being properly treated, he would be taking fewer medications and his symptoms would greatly improve. White did not improperly discount side effects that result from necessary medication. He discounted side effects resulting from over-prescription. White's opinion was not error.

Discussion: Credibility

Bass also argues that the ALJ failed to properly assess his credibility. (Doc. 16, p. 16) The court does not agree.

The ALJ is not required to accept a claimant's subjective testimony of disability and may discount it if she provides the proper justification. *See also Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) ("[T]he ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking.") (punctuation modified). "To determine whether the claimant's testimony regarding the severity of his symptoms is credible, the ALJ may consider, for example: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). In this case,

the ALJ found that while "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms" his statements concerning limiting effects of those impairments was not entirely consistent with the medical record. (Tr. 24)

The ALJ noted that in January of 2015, Bass presented to the emergency department complaining of nausea and vomiting for four days. (Tr. 24) (citing Ex. 20F/4); (Tr. 772-776) Bass was given a differential diagnosis of gastroparesis, viral syndrome, malingering, and electrolyte abnormality. (Tr. 775) Melissa Ann Kelsey, D.O., found no abdominal tenderness or dehydration. (Tr. 776) She told Bass he needed to undergo a [per oral] challenge for a proper evaluation, but Bass refused. *Id*. "He had completely unremarkable labs and there was no concern for significant pathology based upon normal labs, normal vitals, normal physical exam" *Id*. The ALJ incorrectly stated that Bass was given a final diagnosis of malingering. (Tr. 24) As Bass correctly notes, malingering was only a "differential diagnosis" and did not appear in the final diagnosis which was "Nondiabetic gastroparesis, Abdominal pain, and Dehydration." (Tr. 777); (Doc. 21, p. 4) Nevertheless, the ALJ correctly highlighted the fact that the Bass did not display the clinical signs ordinarily associated with the symptoms he reported. (Tr. 24, 776) In addition, he noted that Bass was unwilling to accept the suggested course of treatment offered by the attending physician. (Tr. 24, 776)

The ALJ further noted that Bass was evaluated on April 2, 2015 by Miguel Arenas, M.D. (Tr. 25) (citing Ex. 25F/7); (Tr. 877) Arenas found Bass "well developed, well-nourished and in no acute distress." *Id*. He further found "that the claimant was non-compliant with his medications." *Id*.; (Tr. 878) A claimant's failure to follow a prescribed course of treatment is some evidence that the claimant's subjective testimony is not entirely credible. *See Smolen v. Chater*, 80 F.3d at 1284.

The ALJ also noted that Bass was examined by Jerome Rothbaum, M.D., on February 25, 2016. (Tr. 25) (citing Ex. 34F) Rothbaum also found Bass "in no acute distress" but he did observe substantial weight and muscle loss. (Tr. 26) (citing Ex. 34F) Rothbaum "felt that the claimant did not give maximum effort" during his examination of Bass's respiration. *Id*.; (Tr. 1071) Bass "complained of substantial accentuation of abdominal pain although the

examination was very minimal and very light." *Id.*, (Tr. 1072) "He also complained of exacerbation of left knee pain although the examination was very minimal." *Id.* Rothbaum's observations also support the ALJ's adverse credibility findings.

The ALJ discounted Bass's testimony of disabling pain because the medical record contains evidence that Bass is non-compliant with his medications and he exaggerates the extent of his symptoms. In addition, Bass's testimony concerning his residual functional capacity is not supported by any similar opinion in the medical record. Bass testified that he can sit, walk, or stand for only 10 to 15 minutes at a time. (Tr. 70) None of the physicians in the medical record opined that Bass is limited to that extent. The ALJ's decision to discount Bass's credibility is supported by substantial evidence and is free from legal error. *See Carmickle v. Commissioner*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony.").

Discussion: Vocational Testimony

Bass argues that the ALJ erred by failing to clarify why the vocational expert's testimony differed from the Dictionary of Occupational Titles (DOT). The court concludes that the ALJ properly resolved this conflict at the hearing.

At step five of the disability analysis, the ALJ must determine whether the claimant's Residual Functional Capacity (RFC) allows him to perform work that exists in the national economy. *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015). "In making this determination, the ALJ relies on the DOT, which is the SSA's primary source of reliable job information regarding jobs that exist in the national economy." *Id.*, pp. 845-46 (punctuation modified). The DOT describes the exertional and educational requirements for each listed occupation. *Id.*, p. 846. The ALJ may also rely on the testimony of a vocational expert. *Id.* "When there is an apparent conflict between the vocational expert's testimony and the DOT—for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle—the ALJ is required to reconcile the inconsistency." *Id.* "The ALJ must ask the expert to explain the conflict and then determine whether the vocational

- 13 -

expert's explanation for the conflict is reasonable before relying on the expert's testimony to reach a disability determination." *Id.* (punctuation modified).

In this case, the vocational expert, Cottle, testified that a person with Bass's RFC could work as a pharmacy clerk, counter clerk, or cashier. (Tr. 55-56) The jobs identified by Cottle were light work jobs, but Bass did not have the exertional ability to perform the full range of light work. Accordingly, the ALJ asked Cottle to explain the discrepancy between his testimony and the DOT. (Tr. 56) Cottle explained that the discrepancy was "based on my experience as a provid[er] [of] rehab services and written job analysis." *Id.* He asked, "You included a sit/stand option?" *Id.* The ALJ answered, "Yes," and Cottle replied, "It's . . . It's based on my experiences." *Id.* This court concludes that the ALJ properly identified and resolved the conflict between the DOT and the expert's testimony.

Bass argues that the expert only resolved the conflict surrounding the sit/stand option and nothing more. This court reads the record differently. Accordingly,

IT IS ORDERED that the Commissioner's final decision in this matter is AFFIRMED. Bass's condition does not meet or equal Listing 5.06. *See* 20 C.F.R. Part 404, Subpt P, App. 1 § 5.06. The ALJ properly discounted Bass's credibility. The ALJ properly identified and resolved the conflict between the Dictionary of Occupational Titles (DOT) and the testimony from the vocational expert. The Clerk of the Court is instructed to enter judgment accordingly and close this case.

DATED this 31st day of October, 2017.

_____
Leslie A. Bowman
United States Magistrate Judge